**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | **CIVIL ACTION NO. _____** |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| **v.** | ) | |
| | ) | |
| **BMW MANUFACTURING CO., LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of race and to provide appropriate relief to aggrieved black employees who were adversely affected by such practices. (hereinafter "Claimants").  As more fully described below, Plaintiff U.S. Equal Employment Opportunity Commission ("Plaintiff" or the "Commission") alleges that Defendant BMW Manufacturing Co., LLC ("Defendant" or "BMW") maintains a criminal conviction background check policy that has a disparate impact on black employees and applicants.  As a result of Defendant's application of this policy to the Claimants, Defendant denied them access to its manufacturing facility in Spartanburg, South Carolina, and deprived them of employment opportunities with Defendant and its suppliers of logistics services.

JURISDICTION AND VENUE

1.      Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3)("Title VII").

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina.  This lawsuit is being filed in the Spartanburg Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Spartanburg Division.

<u>PARTIES</u>

3.      Plaintiff Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, BMW has continuously been a Delaware limited liability company doing business in the State of South Carolina and the City of Spartanburg, and has continuously had at least fifteen (15) employees.

5.      At all relevant times, BMW has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

6.      Claimants were employees of UTi Integrated Logistics, Inc. ("UTi"), which provided logistic services to BMW at BMW's Spartanburg, South Carolina, manufacturing facility (the "BMW facility").  The Claimants include 69 black employees.

7.      The logistical services provided by UTi included warehouse and distribution assistance, transportation services, and manufacturing support.  UTi employees, including the Claimants worked in a BMW owned warehouse located on the grounds of the BMW facility.

8.      BMW controlled the access of the Claimants to the BMW facility.

9.      Both UTi and BMW supervisors were present in the warehouse where UTi employees unloaded and inventoried auto-part shipments.

10.     Most auto-parts were moved from the warehouse to the production plant by robotics through a tunnel connecting both buildings.  BMW supervisors in the warehouse, however could, and did, directly order UTi employees to manually pull parts and transport them to the production plant by forklift.

11.     At all relevant times, BMW was a joint employer of the Claimants within the meaning of Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h), exercising control over aspects of the Claimants terms and conditions of employment with UTi.  Moreover, all of the Claimants' work took place at the BMW facility, the work did not require a high level of skill, BMW provided at least some of the tools used by the Claimants, many of the Claimants had worked at the BMW facility for years, and the work provided by the Claimants supported BMW's regular business.

12.     BMW interfered with Claimants' employment relationship with UTi and any other logistic services provider that later provided services at the BMW facility by denying the Claimants access to the BMW facility.  BMW also interfered with Claimants' employment relationship with one or more other logistic services providers at the BMW facility by refusing to allow Claimants to be hired by such providers.  BMW controlled access to the BMW facility and

thus controlled access to employment opportunities with UTi and other logistic services providers.

## STATEMENT OF CLAIMS

13. More than thirty days prior to the institution of this lawsuit, six black individuals who were employed by UTi, and worked at BMW's facility in Spartanburg, SC, filed Charges of Discrimination with the Commission alleging violations of Title VII by BMW. All conditions precedent to the institution of this lawsuit have been fulfilled.

14. In 2008, UTi and BMW negotiated an end to their contract for logistics services. By agreement, the end date was July 27, 2008.

15. BMW contracted with another contractor to perform its logistics services (hereafter "new logistics contractor"). During the transitional period, UTi employees were informed of the need to apply with the new logistics contractor to retain their positions at the BMW warehouse.

16. BMW desired to retain as many UTi employees as possible to minimize disruption at the BMW facility. Many of the UTi employees had worked in the BMW warehouse for years - even preceding UTi's contract with BMW - having started work at the BMW facility for one of UTi's predecessors.

17. As part of the application process, BMW directed the new logistics contractor to perform criminal background checks on every UTi employee applying for transition of employment to the new logistics contractor. The new logistics contractor performed such a criminal records check on approximately 645 UTi employees.

18.     The new logistics contractor discovered that 88 current UTi employees applying for work with the new logistics contractor had criminal convictions in violation of BMW's criminal conviction policy and informed BMW of these results.

19.     Upon information and belief, BMW's written criminal conviction background check policy has been in effect since the opening of the BMW facility in 1994.  BMW's written criminal conviction background check policy excludes individuals with convictions of the following categories of crime: "Murder, Assault & Battery, Rape, Child Abuse, Spousal Abuse (Domestic Violence), Manufacturing of Drugs, Distribution of Drugs, [and] Weapons Violations."  As further reflected in the written policy documents, "any convictions of a violent nature are conditions for employment rejection," and "there is no statute of limitations for any of the crimes."

20.     Upon information and belief, BMW also excludes from employment individuals with criminal convictions, involving "theft, dishonesty, and moral turpitude."

21.     Upon further information and belief, BMW's criminal conviction policy makes no distinction between felony and misdemeanor convictions.

22.     In or around July 2008, as a result of BMW's application of its criminal records background check, BMW denied Claimants access to the BMW facility, and the new logistics contractor rejected the Claimants for hire.

23.     Claimants were denied access to the BMW's facility without any individualized assessment of the nature and gravity of their criminal offenses, the ages of the convictions, or the nature of their respective positions.  Moreover, they were denied plant access without any assessment or consideration of the fact that many had been working at the BMW facility for several years without incident for UTi and prior logistics services providers.  By way of

example, one black female Claimant was denied plant access solely based upon a 1990 misdemeanor conviction for simple assault, punished only by a $137 fine, after nearly 14 years of service for UTi and prior BMW logistics services providers.

24.     BMW's criminal conviction policy operates to exclude disproportionate percentages of blacks.  Of all the employees assigned by UTi to work at the BMW facility, 355 or 55% were black and 290 or 45% were non-black.   BMW denied plant access pursuant to its criminal conviction background check policy to a total of 88 employees assigned by UTi, or around 14% of all employees assigned by UTi to work at the BMW facility.  Of those 88 employees, 70 (80%) were black and 18 (20%) were non-black.  The gross disparity in the rates at which black and non-black employees were denied access to the BMW facility and therefore lost their employment on account of BMW's criminal history background check policy is statistically significant.  Upon information and belief, BMW continues to use the same criminal background check policy.

25.     Each Claimant is a qualified applicant who had worked at the BMW facility for several years.  For example, the black female Claimant who had worked at the BMW facility for 14 years was denied plant access by BMW because of its criminal conviction policy.  Likewise, a black male Claimant had worked at the BMW facility for 12 years, but was denied plant access by BMW because of its criminal conviction policy.

26.     Each Claimant is a qualified applicant who had worked at the BMW facility, but was denied plant access by BMW because of its criminal conviction policy, and lost his or her employment and/or was denied hire.

27.     BMW's use of its criminal conviction background check policy constitutes an unlawful employment practice in violation of Section 703(a) of Title VII.  BMW's policy had,

and continues to have, a significant disparate impact on black employees and applicants and is not job-related and consistent with business necessity.  The effect of the practice has been to deprive the Claimants of equal employment opportunities.

PRAYER FOR RELIEF

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from race discrimination, including the use of any selection or plant access criteria that has a disparate impact on black individuals; the application of a conviction records policy as a selection or plant access criteria without conducting an individualized assessment that considers the nature and gravity of the offense, the time that has passed since the conviction and/or completion of sentence, and the nature of the job held or sought; the application of a conviction records policy as a selection or plant access criteria that is not job-related and consistent with business necessity; and any other employment practice which discriminates on the basis of race.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for black individuals, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make whole the Claimants by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practice, including but not limited to reinstatement or front pay in lieu thereof.

D.     Grant such further relief as the Court deems necessary and proper in the public interest.

E.     Award the Commission its costs of this action.

DATED this the 11th day of June, 2013

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M. Street, N.E.
Washington, D.C.  20507

LYNETTE A. BARNES
Regional Attorney (N.C. Bar No. 19732)
E-mail: Lynette.Barnes@eeoc.gov

TINA BURNSIDE (Wis. Bar No. 1026965)
Supervisory Trial Attorney
E-mail: Tina.Burnside@eeoc.gov

s/ Nicholas Walter
NICHOLAS WALTER
Trial Attorney (Fed. Bar. No 9975)
E-mail: Nicholas.Walter@eeoc.gov
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone: 704.954.6472
Facsimile: 704.954.6412

**ATTORNEYS FOR PLAINTIFF**